And the next case that we'll hear is In Re Allen Hill, appellate number 25-1810. Good afternoon, and may it please the court, Andrew Gallo from Morgan Lewis for Appellant Steward Lender Services, or SLS. I'd like to reserve three minutes for rebuttal, if I may. The issue that decides this case is whether Allen Hill was balance sheet solvent on the transfer dates. It's a preference case. Why should we be about balance sheet? Should we be focusing on the way the balance sheet reads according to general accepted accounting principles, according to the way the financial market would value it? What principles guide us? Because we all agree, okay, it's easy to say, what the value at a high level of abstraction, but we have to think about how to put teeth in it. Is that a legal question we can explicate, or is that just a factual determination where you should defer to the bankruptcy court? I think this is resolved in the case law, your honor. Balance sheet is the colloquial term that us bankruptcy lawyers use for it, but it's really a fair valuation. What does that mean? Insolvent is defined in the code as the sum of such entity's debts is greater than such entity's property at a fair valuation. You start with the balance sheet, you look at the assets, you look at the liabilities, and then you have to value each asset and each liability as a fair market value. The question here is fair market value. Is there any reason to be treating contingent liabilities differently from disputed liabilities? Should it be a discounted by the probability of success computation, or should we be looking at face value? How do you suggest we do that? Yes, so I believe that there is a difference between a contingent liability and a disputed liability in terms of how you value those.  A contingent liability is a claim pursuant to which there is a future triggering event that has to occur in order for the claim to have value. So for example, this court's decision in RML dealt with credits that were a contingent asset on the balance sheet of the debtor. That asset would only come into being if some future fact occurred. In that case, it was the closing of a loan. So the court ruled that in order to value that credit, fair market value, you figure out how it's recorded on the balance sheet, and then you determine the probability of the contingent event occurring. You have a math equation. This is also the Seventh Circuit and Zonics, and that's how you decide the contingent liability. The difference between a contingent liability and a disputed liability is with respect to a disputed liability, there is no future triggering event that has to establish liability. All of the events giving rise, in this case, we have a claim, so a liability. All of the facts necessary to establish that liability have already occurred. Okay, I understand that that is a different definition, but why should that lead to a different result? Whether it's a dispute about the past or an uncertainty about the future, doesn't that create some probability or some risk that should lead us to discount it? It can, Your Honor. So with respect to a disputed claim, if the claim has not been resolved at all, so if the claim remains in dispute, what the court has to do, the valuation court, is determine how that dispute would be resolved, and in connection with determining how the dispute might be resolved, the court may use probability. But it's not assessing the probability of a future triggering event occurring. What it's assessing is the probability of a decision. Based on facts as we know them, and based on law, what is the likelihood of a decision? Now, the court could hold its own trial and decide and take in all of the evidence from the dispute and make an actual decision and say, I'm not even going to, I'm not going to use probability as a shortcut. I'm going to have a second trial in this case. That doesn't happen because it wouldn't be, you know, efficient for the court to do that. So oftentimes with disputed claims, courts will use probability as a shortcut to making a determination as to how the dispute would be resolved. That short... More than one way you can, in a scenario like this, a disputed claim, that's pending in a court. Correct. There are multiple ways that that item could be valued. One could be the scenario you just described, where the bankruptcy court chooses to have a trial and say, I think there's a 100% live chance that the claim is going to hit big or be a no cause, whatever it might be. Or it could be the scenario like we have here, where we have a judgment at the time the court is making its assessment. So this is just one of several ways that this could be decided. So I think the end goal in all those ways, Your Honor, is the court is trying to figure out how should this dispute be resolved. Whether it's already a judgment, the court doesn't have to guess. The dispute's been resolved. That judgment is what should control. And when you have a final judgment, it's the final judgment that can be controlled. If that judgment has been rendered at the time the court is making the valuation decision. Even though that could be, as in this case, years after the transfer at issue happened. Yes. As the court in WR Gray said, the valuation court is asked to make the valuation decision when it's being asked to make it. Here, the valuation decision was being made after the claim was finally resolved. We knew exactly what the liability was. The only other way to do this would have been to hold the trial all over again. That was already held in the Colorado court and ask Judge Gross, in this case, make your own decision. Ignore the Colorado court's decision to make your own, which wouldn't make a lot of sense. There's no reason to try to assess probability in that respect where you know what happened. So what you're saying is, if at the time, the fair way to assess this claim, let's just go 50-50, is somewhere between, you know, midpointing between $2 million and $26 million. So I don't know if that number is around $14 million, let's say, $13, $14 million at the time. And maybe that's the number, and that's going to take you into insolvency. But you're saying, that might be what qualified as solvency in that snapshot. But since the clock's run, and since we now know that that's 50-50, valuation's wrong, and we're at $2 million, just forget everything WR Gray tells us, just forget it, because we know. So it seems that it creates just, I'm thinking of incentives for fraudulent transfers. It kind of, you know, if you win, and it's your side of the coin that comes up on a 50-50, then nothing's fraudulent because you wound up winning versus the actual maybe valuation at the time would be, no, it's fairer to say this is worth $14 million or $12 million or some number around six or seven, which is, I'm determining to be the solvency bright line. Yeah, I go back again, Your Honor, to say that whenever you're discounting that claim, what you're really doing is you're resolving the claim. You're determining how would a court resolve the claim based upon facts that we know that existed as of the valuation date and based on applicable law. And so however far you go, however far the valuation court goes towards resolving that claim, it's an inferior valuation methodology where you have the actual claim having been resolved by the court that had jurisdiction to resolve the claim. I'm sorry, which was the inferior one, making a speculative decision? Making a speculative decision over when you know exactly how the claim was resolved. I mean, I don't even know how it would work in this case. I mean, if you were to, if you, so if you were to use... I'm sorry, let's use this case, right? Let's assume that the valuation, the court, you said the bankruptcy court is to make a valuation at the time it's asked to make a valuation. And let's assume that was before the Aurora Appellate Court cut the verdict.  And so the number in front of the appellate court was $26 million. The number in front of the bankruptcy court was... It was in front of the... The valuation court was $26 million. Under our theory, if that was the judgment that was available at the time they were making the decision, the court would have to rely on that judgment. But that wasn't the judgment. Certainly, that's not, certainly as between our argument and my opponent's argument, their argument that you should use a judgment that was later determined to be erroneous like that, I think, is out the window. It's either you use the final judgment or you have to make some sort of probability determination, you know, as, or you have to rule that you can't consider the judgment. You have to, you can't consider any hindsight. You have to just look at, you have to just look at what facts, you have to just look at, assume at, forget the judgment and assume a valuation as of the time of the valuation date. We think in that scenario, we win as well, because the burden was on Allen Hill. In this claim, they're the plaintiff. They brought the case. They had the burden to prove insolvency. The only evidence they put on of insolvency was the judgment. And if, and if we're saying, no, no, you got to ignore the judgment, you got to make a probability determination, they put on no evidence to meet their burden of the probability determination. We put on an expert evidence as to solvency. Well, you asked us, you're asking us the point in time of the value, what's known at the time the bankruptcy court makes a valuation determination. But as I understand it, we're supposed to determine the value of the disputed claim at the time of the transfer. So should we be, should we talk about any of that stuff and should, should the bankruptcy court put blinders on and say at the time of the transfer, what was the value of this claim? Is that, is that- I'm saying we win both ways. So I think- Happen to win both ways in this particular case. In this particular case, yes. But we need to put forth potentially a test so that others who are not in your situation know what the rules of engagement are. And I believe the test should be that where you have a disputed claim, you can look beyond the date of valuation. So you're beyond the transfer date to how that claim is resolved in order to, in order to make a valuation determination. That's- Is the, is the reason for that because accuracy should be the, the, the North Star for a, for a court-ordering evaluation? Yes. I believe it's the accuracy. And I also believe it's, the other reason is this is distinguishable from, from the, this court's ruling in RML because you have a disputed claim and not a contingent claim. RML is specifically talking about the probability, the likelihood of some future triggering event. Here all of the events necessary to trigger liability had already occurred. The only thing the valuation court is doing is it's making a determination as to a resolution of the dispute. And when you know how the dispute was resolved, you don't have to approximate how it could be resolved. You don't use probabilities. Could you talk a second about NRA advanced technologies, the 11th Circuit case, and it talked a little bit, echoing some of the ideas that Judge Bevis was asking about in terms of expected values and present value and all of that, why should we not follow that case? Now, I know they called their claim contingent. It didn't look contingent to me when I was looking at it. I think the case- They labeled it as contingent. I think you shouldn't follow it because it was wrong. I think they improperly designated a disputed claim as a contingent claim, and then they used a probability analysis. I will say that this case is distinguishable from that case because in that case they didn't have a judgment. They had a settlement. And so the case, the claim was unresolved, and then there was a settlement of the claim post-bankruptcy, and the court said, the Circuit Court said, you know, you can't necessarily use that settlement. You need to work on a probability analysis. But here you actually did have a settlement because you did have something settled to pay the attorney's fees of the $2 million cash. But it's really irrelevant to the solvency analysis because we had a, there was a judgment entered by the lower court after the case was remanded on appeal. The appellate court enforced the $2 million damages cap. The lower court entered a judgment for $2 million. There was a dispute as to post-judgment interest and fees. That was resolved by the settlement, but that's not really relevant to this dispute. They would be, either they used $2 million or $2.05 million, they're solvent, and we win. And if you're a solvent, I know we're almost out of time, and then I'll ask my colleagues a question. Let's assume that if it were determined Allen Hill was insolvent, right, and the money was transferred, would SLS have to return the money back to the bankruptcy estate? And then what would happen to all the creditors? Because the district court judge seemed to be very animated by reliance interest by other creditors. Right. So I think there's, Your Honor's hitting on two different things. First of all, there was no reliance, Allen Hill can point no reliance to any creditor. As we pointed in our papers, when their plan was confirmed, when they exited bankruptcy, it was before the appeal was resolved, and they said in their plan, our appeal may render us solvent. So nothing in the bankruptcy, other than this claim, turns on the solvency dispute. If we were required to, if we were lost, and we were forced to give the money back, we would then have a claim in Allen Hill's bankruptcy for the amount we gave back. So if we had to give back $6 million, we'd have a claim for $6 million. And then there'd have to be further proceedings in the bankruptcy court as to how that claim gets resolved and how money gets distributed in the plan. So other creditors could still come back to the table and say, hey, I hear there's more money in this estate. I'd like to be more- Well, they haven't closed the bankruptcy yet, so I don't think the distributions have been made yet. This claim has to be resolved before distributions are made. My time is up. Thank you. Let me just see if there's anything else. Okay, thanks. Thank you. We'll see you in a little while. Good afternoon. May it please the Court. I'm Peter Vantol of Vantol Law for the Pele-Allen Hill. I'd like to start, Your Honors, if I could, with where I think Judge Phipps was, and I'd like to put some flesh on these bones. If you use a discounting method here, I submit we'll get to the same result, and I'll explain why. If you look at the facts of this case, the assets at the time of the transfers were $9.6 million. The non-Aurora liabilities were $3.6 million. So in other words, if on remand the bankruptcy court makes some sort of determination on discounting, it would have to say that there was no more than a 23% chance of that $26 million judgment happening and sticking on appeal. Because if you add that money to the $3.6 million, you're still at insolvency. Can we tell that on this record? Your Honor, I don't think you can decide that as a matter of ... Well, I should back up. Those are the facts on the record. No, no, no. But how can we tell whether the probability was greater or less than 23% on this record? That I don't think you can do on this record, Your Honor. That would then call, if we adopted that approach, for kicking it back for some further record development. I think we'd have to, Your Honor, to answer your questions. What I would submit is, whatever method we look at, the result is going to be the same. My way of thinking, that's an extraordinarily low percentage for a case where the Colorado District Court had a basis for its finding. It went up on appeal. There was a dissent. This was a close issue. This was not a slam dunk reversal on appeal. I want to hark back to the reason why it's important to use a contemporaneous judgment here. It's something that we talked about a bit earlier. If you look at the statute, 547 refers to 90 days twice. It says there's a 90 day presumption of insolvency, and it looks at transfers that happen within 90 days. That's because it's very difficult sometimes to figure out what was going on in a bankruptcy. There is a presumption that something was afoot, and that there should be a finding of insolvency unless it is proven. But here, Your Honors, and this is very important, the facts show that 26 million is a more accurate figure because we have undisturbed findings by the bankruptcy court. If you look at joint appendix 64, the bankruptcy court said that the Aurora liability was, quote, potentially crippling liability. Yeah, but what about the contractual cap of $2 million? Your Honor- That is a pretty clear statement of reality, and in fact, we know the Intermediate Appellate Court in Colorado said that's the number. It was the number, Your Honor, but it was hotly disputed because it determined- It might have been disputed, and I respect the fact that, I understand that, and I totally respect the fact that there were differences of opinion. But the reality on the ground for that bankruptcy judge at the time they needed, he or she needed to make the decision about whether there was solvency was the true number from the final judgment was $2 million, not 26 million. And your analysis would ask us to ignore that reality. For a very good reason, Your Honor, because I think that is a distorted reality. If you look at ... Because we hark back to the very first thing that my friend talked about was, how do you get to value? It's supposed to be a fair market value. The problem with the $2 million figure is it was a settlement well into the bankruptcy when Aurora slash Lehman itself was on the cusp of bankruptcy and struck a deal, like people do in bankruptcy. Deals in bankruptcy are governed by the fact that they may not be able to collect. In the normal world, Aurora would be saying, let's go back up to the State Supreme Court. Let's get that $26 million back. To use an analogy- So you're saying because they decided to not fight the Intermediate Appellate Court's determination that a $2 million verdict was appropriate under the contract, that means we should ignore that because they could have taken an appeal of it? What I'm saying, Your Honor- By the Supreme Court of Colorado? I'm saying something slightly different, Your Honor, which is the motivations that people had at the time to do things were vastly changed by the intervening events, which is why you don't take an event from 2018 and telescope it all the way back to 2014, 2013. But even if we did, though, not motivations, but appraisal of the value of this claim was $2 million on their balance sheet. I would submit, Your Honor, that's a distorted appraisal, and I'll use a common example. Say you have a house in year one that's worth $200,000. Intervening time, there's a storm that damages it. It's then worth $100,000. That's fair as of that date, but you can't take that $100,000 and say it's always been worth $100,000. But their contractual cap was $2 million, so there was a basis in some financial records in the company, not some force majeure that happens. That changed things, and so they were making ... If you want to talk about motivation, which I don't think goes to what fair market value is, it's not motivation, but we need to focus on what the sequence of events demonstrate, and your approach would ask us to ignore all that. I don't think ignore, Your Honor, but take the choice of another guidepost, which is a $26 million, and I want to hark back to ... Judge Gross is looking at the record at the time. He also said he criticized our expert saying, well, when you're doing your valuation, you didn't account for, quote, Allen Hill is burdened with the Aurora litigation and the potential $25 million liability that this claim represented. That's a joint appendix 88. The judge is saying at the time, there might be this cap, but there's also this massive liability that's burdening you, so if you're going to accept the $2 million cap, you would have to say that the chance of that $26 million event happening are close to nil, and that can't be. It's maybe ... If it's a 50-50 proposition, to go back to what Judge Phipps said, Allen Hill's still insolvent, so ... But the reality is that it was $2 million. That's the number that if there was going to be a collection on that judgment, it would be capped at $2 million. Based on settlement, Your Honor, yes, but it was not ... Based on a finding of the Intermediate Appellate Court, that that was the judgment based on the cap. The decision not to further seek review is a different topic. No doubt, Your Honor. I am not doubting at all that we have a disparate choice between the $2 million and the $26 million. What I'm positive is ... I'm not talking about a choice. I'm talking about the final judgment that existed. Someone would go to collect on it. It'd be capped at $2 million. Your Honor, I completely understand, but what I'm saying is for purposes of trying to figure out what the value was of that same liability in 2014, you couldn't predict with 77% certainty that that was going to be the result. That is my point. Well, why is it 23% certainty more certain? How is that more tethered to this record? It's not, right? We don't have records to do that. I agree in one sense, Your Honor. We do have a record. We know what the assets and the liabilities are, and it was so close here that it wouldn't take much to tip it into insolvency. To go back to our earlier exchange, I do believe if you apply a discounting method, and I understand why that would be a proper approach, I think a remand is appropriate here. Back to the bankruptcy court, and the bankruptcy judge can say, I'm going to look at this record anew. I'm going to make an educated guess on what I think the liability would be. If it's 50-50, we're still insolvent. Judge Phipps? Yes, Judge Phipps, Your Honor. Your friend on the other side says, no, no, no, don't do any of that. We got this W.R. Gray's case. The W.R. Gray's case tells us just go with your best final determination. Now, the W.R. Gray's case that I saw in the briefs was not a Third Circuit case. It wasn't even a district case. It was a bankruptcy court case. I get it. There's W.R. Gray's. If I'm going to make an inference, you totally disagree that W.R. Gray's should control here, but there's reasons that I'd like to hear your reasons for why not, because we've got at least one data set that says, hey, why do all the guesswork when eventually we've got certainty? I think maybe I'll start you one foot down the road on this, because you're going to say, hey, solvency is what triggers bankruptcy. Solvency is what triggers fraudulent transfers. Solvency has to be contemporaneous, yet at the same time, we've got our experts in the bankruptcy court saying something different. That's how I kind of am seeing both sides of that issue. What's your guidance on that? Your Honor, I think the way I read Gray's is the court had to take that approach because there was no other number. Everyone knew that there was a Sylvester's problem. There was no number to choose from. In our case, we have possibly too much to choose from, so I think in Gray's, that would be the guidance there, and it wasn't a judgment, so I don't think it's on point, but Your Honor reminded me of, in talking about solvency, this is why it's so critical, and I was talking to my colleagues about this earlier. In every bankruptcy case, the first thing you do is you go, where are my preference claims? It's the low-hanging fruit. You go after them. If this court were to have a rule that you must await a final judgment if there's an appeal from a judgment putting you in bankruptcy, if I'm someone defending a preference case, the first thing I do is ask for a stay, and it could be a three-year stay while it winds its way, the underlying judgment winds its way through the court system. That's antithetical to what bankruptcy is. Bankruptcy is bring money back into the estate, make a distribution to the creditors, and move on. So, what should our, if we were going to write an opinion, what should we say when confronted with a question like this? A bankruptcy court should do the following to value a disputed claim, not a contingent, a disputed claim. As a disputed claim, Your Honor, I think that the onus is on the court to look at, is there a contemporaneous judgment? And what is it contemporaneous with? The contemporaneous, at the time of the transfer, there was an existing judgment. At the time of the transfer, Your Honor, and the reason I go to that is if you look at the coded sales case, what it says is you can look at hindsight to some degree to the extent it gives you a fair and accurate assessment. What I'm positing is the more time goes on from an event that you're trying to value, the less hopeful it is. So, can I get on this, you look to an existing judgment, I get it if that's a full and non-appealable judgment. But once you sit there and say, hey, there's an appealable judgment, there has to be, everyone knows there's always a discount. People that win cases sometimes will settle for 90% or they'll give 10% when they've had no liability, just for the sake of finality. So if it's still appealable, like this one was, there's going to be some dis... But even with that, we don't get to this near 80% that you need, right? That's right, Your Honor. So I am not, I want to be clear, I'm not fighting hard against contingent liability probability discount approach. I can see it. It makes a lot of sense to have a uniform rule because I think in this case, I'm confident it will come out the same way. Do we really need a remand to do that, you think? Or do you think we could just sit there and say, you've locked in 26 million, gee, you did win. So I don't know what that number is. I hesitate, Your Honor, to put that burden on you, but I mean, I think one can take judicial notice of probabilities in life and it's highly unlikely. Really? I really hesitated before I said that, but yes, I mean, I think you get to our result either way. I'm just trying to think what other evidence we would need. I mean, that's the key thing I'm thinking, expert valuations on what a Colorado appellate court would do. I mean, just we tend not to like experts to tell us what courts would do. I think, Your Honor, you're, I'm sorry, do you mean to cut you off, you're experts on the law. I think you can read this record and come to a determination that either way there's solvency, I'm sorry, insolvency here. And I don't mean to suggest you ought to duck the issue, but I think this is such a critical issue for the bankruptcy bar that a rule saying you must await a final judgment because people will try to read it that way is really going to cause, not just in our case, but it's going to cause trouble for banks. So what if the attests were simply at the time, based on what evidence was available by the bankruptcy judge at the time it was making the valuation decision, that's the record evidence. Not, you got to wait for something, it just happens to be this particular case by the time the bankruptcy judge was called upon to do so, it already had the benefit of final judgment. I agree, Your Honor, but I think we need to look at what the bankruptcy judge had said and to the extent he came to a contrary conclusion, I think you can resolve it because those two quotes I read, Judge Gross recognized it was potentially crippling liability. He said that our expert overvalued Allen Hill because it didn't take into account the $26 million liability. You can't have it both ways. It can't be worth $2 million for some purposes and worth $26 million for others. In terms of this sky is falling, the bankruptcy bar is going to ask for a stay and everything so that we can get that done. Why haven't they done that since, when was Grace, like 2000, 2001, 2002, why haven't they been doing that for the last 20 to 25 years if Grace means what your friend says? Because, you know, that's a bankruptcy court expert decision and it said that, isn't it time for the sky to have fallen already come? I don't think so, Your Honor, because I don't think Grace is applicable for one and secondly, the case law is pretty sparse but the few cases we have been able to find like the IFS case from the BAP and the Ninth Circuit, Turner and Cook and Palavis, they all use contemporaneous judgments and what's really important about that. Well, right, IFS, the judgment, it was issued before the transfers, really different. But, Your Honor, I was about to go on to what I think is a key point. Remember there, there was also an appeal. So if the rule were one must wait a final resolution, the court wouldn't have acted. It acted on a judgment that was close in time. Because that's what was available of the events in front of the decision maker at the moment that they were making the decision. Completely agree, Your Honor. But I think my friend's point is, well, no, well, there you couldn't take that judgment because you're waiting for the ultimate resolution. The courts there didn't wait for the ultimate resolution and I think, Your Honor, because the law is murky, no one has taken advantage of, if I can use it that way, of a rule such that you might articulate. But if you do articulate the rule, I think people defending bankruptcy preference actions have a good argument that it should be stayed for years, which I think, again, is antithetical to the bankruptcy approach. So there's going to be a lot of bankruptcies not in Delaware anymore. Or maybe more bankrupt. I don't know the consequences, more in Delaware or less in Delaware, but the bar's going to move, right? The debtor's going to pay it. And I'm running out of time. I just want to point out this is a very common occurrence, as Your Honors know. There are famous cases where judgments drive people into bankruptcy. So, any questions? Judge Pipps, anything further? Counsel, thank you for your arguments. Thank you very much. You bet. Thank you, Your Honors. So, I just want to start with the probability analysis that my colleague started on. I mean, first of all, our argument is you don't have to use the probability analysis. You can use the final judgment. But it's very dangerous to say this court could just do a probability analysis out of the air. Allen Hill had an affirmative claim in the Aurora case for over $20 million. We value that claim at zero at trial because the trial court ruled against them on that claim. If you're going to go back and say everything's up in the mix again, then there have to be evidences to the value of that claim. But you don't have to do that. They had the burden of proof to prove solvency. The bankruptcy court, prior to the trial, didn't put guardrails on that and say, I'm only going to consider the judgment. They made a strategic decision to just put the judgment. That was their only evidence. They offered no expert on solvency. We offered the only expert on solvency. They made that strategic decision. And if Your Honors were to say, no, no, no, there has to be a probability analysis. We met our burden to show some evidence of solvency, and they did not meet their burden to show evidence of solvency under that scenario. Therefore they lose. The other thing that my colleague tends to do is he tends to conflate financial distress with insolvency. No one disputes that the $26 million judgment put Allen Hill in financial distress and likely caused their bankruptcy. But as this court held in the LTL case, financial distress and solvency are two different things. You can be in financial distress, but you could still be solvent on a fair valuation of your assets and your liabilities. And that's what we say is here. My colleague said, in response to Judge Schwartz's question, my colleague said, we think the rule should be that you should use the contemporaneous judgment because that's more accurate. It couldn't be less accurate in this case. The contemporaneous judgment was erroneous. The $26 million judgment was overruled by the appellate court, and Allen Hill has never had to pay $26 million. Allen Hill only has to pay $2 million or $2.05 million. So in this case, it would be the opposite of doing what's fair and accurate to use that  That judgment is erroneous. The other issue would be, I think Judge Phipps, when you were talking about what if we remanded this case, what would the court have to do? The court would have to look at Colorado law. We have binding Colorado law on the same exact facts. It is a Colorado appellate court decision in the case that says on these facts you enforce the $2 million judgment. So if you were to send it back for a ruling on probability, that case law would be binding on whatever court was looking at this, and it would have to come back to $2 million. That's why $2 million is the right number. Maybe not if we send it back with the notion of predict Colorado law on the date, not of the later decision, but on the date of the requested transfer. Right. And if that's the court's ruling, then I come back to the fact that it was their burden of proof. They could have put on that evidence at trial. They didn't. Therefore, they lose. They didn't meet their burden. Thank you, counsel. Thank you, Your Honors. On behalf of the panel, we thank counsel for their incredibly helpful arguments, and the court will take the matter under advisement.